# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GONZALO ESPINOZA, an individual; and ROSALBA ESPINOZA, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, N.A., a North Carolina corporation; and SRA ASSOCIATES, INC., a New Jersey corporation; and DOES 1-20, inclusive,<br><br>Defendants. | **CASE NO: 11-CV-0894-IEG (CAB)**<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 13] |

Presently before the Court is Defendants' motion to dismiss Plaintiffs' first amended complaint. [Doc. No. 13.] For the reasons stated below, the Court **GRANTS** Defendants' motion.

## **BACKGROUND**

The following background is taken from the Plaintiffs' First Amended Complaint ("FAC") unless otherwise noted.

In late 2004, Plaintiffs purchased property located in San Diego County at 397 Camino Elevado, Bonita, CA 91902. The purchase was financed with two mortgages, and the mortgages were secured by deeds of trust (DOT 1 and DOT 2) that were executed and recorded.

Over the next two years, Plaintiffs engaged in a series of additional finance transactions.[1]  By the end of 2007, Plaintiffs' property was secured by two deeds of trust, DOT 3 (with Washington Mutual Bank) and DOT 5 (with Bank of America); all other deeds of trusts had been terminated.

Sometime later, Plaintiffs were unable to make their mortgage payments under DOT 3 and DOT 5.  In July 2009, California Reconveyance Company, an agent of Chase Home Finance (as successor-in-interest to Washington Mutual Bank) filed a Notice of Default (NOD) with the San Diego County Recorder, thus initiating the nonjudicial foreclosure process under California Civil Code § 2924.

In October 2009, Plaintiffs entered into an agreement with a third party for a "short sale." Because the agreement was designed to alienate the property for less than the full amount owed on the property, it was contingent on the approval of the two lien holders, Chase Home Finance (as successor-in-interest to Washington Mutual Bank) and Bank of America.  Plaintiffs obtained approval for the "short sale" from Chase Home Finance and Bank of America and then closed escrow on the "short sale."  According to the terms of the approval, "[u]pon the bank's receipt of the $20,875.53 and a signed copy of the final Short Sale HUD-1 Form the bank will release the lien and charge off the remaining debt as a collectable balance."  [FAC, Ex. E, at 5.]  On March 25, 2010, Plaintiffs' closed escrow on their short sale.  [FAC, ¶ 18 & Ex. A.]

On April 1, 2010, Bank of America filed a Substitution of Trustee and Full Reconveyance, releasing its lien on the property.  The reconveyance deed states, in bold letters:

> **This Release of Lien does not constitute a satisfaction of the underlying debt secured by the Mortgage described above, which remains in full force and effect. It serves only to release the lien of the Mortgage upon the above described property**.

---

[1] In 2006, Plaintiffs refinanced DOT 1 and DOT 2 with Washington Mutual Bank, and a third deed of trust (DOT 3) was executed.  DOT 3 was recorded on June 5, 2006.  As part of the refinance with Washington Mutual Bank, full reconveyance deeds were executed and recorded, terminating DOT 1 and DOT 2.  Soon after recording DOT 3, Plaintiffs obtained a home equity line of credit ("HELOC") with Bank of America, which was secured by a fourth deed of trust (DOT 4) and recorded on November 14, 2007.  Plaintiffs later refinanced DOT 4 with Bank of America, and a fifth deed of trust (DOT 5) was recorded on November 14, 2007.  As part of the refinancing with Bank of America, a reconveyance deed was executed and recorded, terminating DOT 4.

[FAC, Ex. G (emphasis in original).] Plaintiffs then transferred ownership of the property to the new buyer.

In November 2010, Defendant SRA Associates, acting on behalf of Bank of America, sent a collection letter to Plaintiffs demanding payment of a $79,652.98 balance. Plaintiffs' obligation to pay the $79,652.98 balance is the subject of this action.

Plaintiffs filed suit in San Diego Superior Court, and Defendants removed the action to this Court on April 27, 2011. Shortly thereafter, Defendants moved to dismiss Plaintiffs' complaint. The Court granted Defendants' motion, dismissing the complaint with leave to amend. On July 27, 2011, Plaintiffs filed the FAC, alleging three causes of action: (1) for declaratory relief under the California Code of Civil Procedure § 580d; (2) for declaratory relief under the California Code of Civil Procedure § 580e; and (3) for declaratory relief under common law antideficiency protection. [Doc. No. 12.] Defendants now move to dismiss the FAC in its entirety. [Doc. No. 13.]

## **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted). Leave to amend should be granted unless the defect is not curable by amendment. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).

The Court must accept all factual allegations pleaded in the complaint as true and construe them and draw all reasonable inferences in favor of the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court need not, however, accept "legal conclusions" as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940.

## DISCUSSION

**I.  Declaratory Relief Under California Code of Civil Procedure § 580d**

Claim one of the FAC alleges section 580d precludes Bank of America from collecting the remaining balance under DOT 5. The Court addressed this issue in its previous Order. [*See* Doc. No. 11, at 4.] Under California law, if a borrower defaults on a loan secured by a deed of trust containing a power of sale clause, the lender may pursue a nonjudicial foreclosure. *Benitez v. Recon Trust, CA*, No. 11-CV-510 BEN (WMC), 2011 WL 998327, at *2 (S.D. Cal. Mar. 21, 2011) (citing *McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-37 (1930)). A nonjudicial foreclosure is subject to the antideficiency statutes, which prevent the foreclosing lender from obtaining a judgment for any difference between the debt and the proceeds from the sale:

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold *by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust*.

Cal. Civ. Proc. Code § 580d (emphasis added). By its terms, section 580d applies "only when a personal judgment against a debtor is sought *after a foreclosure*." *Dreyfuss v. Union Bank of Cal.*, 24 Cal. 4th 400, 407 (2000) (emphasis added).

Plaintiffs argue that, under § 580d, a secured lender waives its right to a deficiency by *initiating* nonjudicial foreclosure proceedings, whether or not a nonjudicial foreclosure sale actually occurs. Plaintiffs' assertion is incorrect under California law. "Mere commencement of nonjudicial foreclosure proceedings [is] not an election of remedy." *Bank of Am. v. Graves*, 51 Cal. App. 4th 607, 614-15 (1996) (citing *Carpenter v. Title Ins. & Trust Co.*, 71 Cal. App. 2d 593, 596 (1945)); *Griffin v. Compere*, 114 Cal. App. 2d 246, 247 (1952) (holding that, where a creditor brought a foreclosure action but then dismissed it, merely initiating the foreclosure action did not constitute an election of remedies that would preclude a later private sale and suit for the deficiency).

Plaintiffs, citing no authority on this point, argue that, because Bank of America secured a deed of trust with a power of sale provision, it effectively enforced the power of sale provision by approving

4

Plaintiffs' short sale. A power of sale provision in a deed of trust grants a lender the right to conduct a nonjudicial foreclosure sale. *See Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1158 (2011). But no foreclosure sale occurred in this case. Section 580d does not apply here, because it only applies to protect a debtor from a deficiency judgment *after a foreclosure sale*. *Dreyfuss*, 24 Cal. 4th at 407.

Plaintiffs' allegations do not entitle them to relief under section 580d. Thus, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' first cause of action.

## II.  Declaratory Relief Under California Code of Civil Procedure § 580e

California Civil Procedure Code Section 580e provides, in relevant part:

> (a)(1) No deficiency shall be owed or collected, and no deficiency judgment shall be requested or rendered for any deficiency upon a note secured solely by a deed of trust or mortgage for a dwelling of not more than four units, in any case in which the trustor or mortgagor sells the dwelling for a sale price less than the remaining amount of the indebtedness outstanding at the time of sale, in accordance with the written consent of the holder of the deed of trust or mortgage, provided that both of the following have occurred:
>
>> (A) Title has been voluntarily transferred to a buyer by grant deed or by other document of conveyance that has been recorded in the county where all or part of the real property is located.
>>
>> (B) The proceeds of the sale have been tendered to the mortgagee, beneficiary, or the agent of the mortgagee or beneficiary, in accordance with the parties' agreement.

In short, section 580e prevents a lender that consents to a short sale from pursuing the post-sale deficiency.[2] However, because section 580e became effective on January 1, 2011, and the amendment in July 2011, well after Plaintiffs executed their short sale, Plaintiffs are not protected by section 580e.

Plaintiffs closed escrow on their short sale on March 25, 2010, and Bank of America executed the reconveyance deed on April 1, 2010. [FAC, ¶¶ 18-19.] Title was transferred to the new buyer shortly thereafter, and by November 3, 2010, Bank of America sought payment of the balance of Plaintiffs' debt—$79,652.98. [*Id.* ¶¶ 20-21.] But section 580e was not enacted until January 1, 2011.

---

[2] Enacted on January 1, 2011, section 580e initially protected a debtor engaging in a creditor-approved short sale from liability for any deficiency owed on the *first deed of trust* only. *See* 2010 Cal. Stat., ch. 701 (S.B. 931). As amended on July 15, 2011, section 580e now applies to any lender that consents to a short sale, whether or not the lender is in the first position. *See* Cal. Civil Proc. Code § 580e; 2011 Cal. Stat., ch. 82.

1   The general rule is that statutes operate prospectively unless the statute includes a provision expressly stating otherwise. *See United States v. Sec. Indus. Bank*, 459 U.S. 70, 79-80 (1982) ("'[A] retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be the unequivocal and inflexible import of the terms, and the manifest intention of the legislature'" (quoting *Union Pac. R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199 (1913) (internal quotation marks omitted)). Moreover, California's Civil Procedure Code includes a provision stating that "[n]o part of [this code] is retroactive, unless expressly so declared." Cal. Civ. Proc. Code § 3; *see also Evangelatos* v. *Superior Court*, 44 Cal. 3d 1188, 1207-08 (1988) ("[L]egislative provisions are presumed to operate prospectively, and that they should be so interpreted 'unless express language or clear and unavoidable implication negatives the presumption.'" (quoting *Glavinich v. Commonwealth Land Title Ins. Co.*, 163 Cal. App. 3d 263, 272 (1984))).

Nothing in section 580e indicates that it should apply retroactively. Because it was enacted after Plaintiffs conducted their short sale, Defendants argue that section 580e does not preclude them from seeking the remaining balance of Plaintiffs' loan.

Plaintiffs attempt to avoid the retroactivity issue by reframing the focus of section 580e. They argue section 580e regulates *deficiencies* stemming from short sales, not the short sales themselves. Under Plaintiffs' theory, once enacted, section 580e extinguished any then-existing deficiencies. Because there remained a deficiency balance on Plaintiffs' loan at the time the new law took effect, Plaintiffs argue that section 580e bars Defendants from seeking the deficiency. [Pls.' Mot., at 11 ("The legislature could have easily put that no deficiency should lie after the effective date of this bill[;] however, they did not. Plaintiffs assert that this was intentional.").]

The practical effect interpreting the statute as Plaintiffs suggest would be to extinguish the rights to deficiency balances negotiated between parties prior to the enactment of section 580e. In other words, despite Plaintiffs' attempt to interpret section 580e so that it would apply to this case without also operating retroactively, applying the statute as Plaintiffs' request would cause the precise harm courts seek to avoid with the presumption against applying statutes retrospectively: interference with parties' antecedent rights. *See Nat'l Collection Agency, Inc. v. Fabila*, 93 Cal. App. 3d Supp. 1, *3 (1979) ("It is well settled that no law impairing the obligations of contracts may be passed." (citing

U.S. Const. art. I, § 10; Cal. Const. art. I, § 9)); *In re Rauer's Collection Co.*, 87 Cal. App. 2d 248, 253 (1946) ("The rule that a statute is presumed to operate prospectively only, unless an intent to the contrary clearly appears, is especially applicable to cases where retroactive operation of the statute would impair the obligations of contracts or interfere with vested rights.").

Plaintiffs' interpretation of section 580e also ignores the most plausible reading of the statutory text. Section 580e provides that a lender cannot collect a deficiency "in any case in which the trustor or mortgager *sells* the dwelling for a sale price less than the remaining amount of the indebtedness outstanding at the time of the sale." Cal. Civ. P. Code § 580e(a)(1) (emphasis added). The word "sells" is prospective in nature; it suggests the legislature intended section 580e's antideficiency protections to apply to future short sales, not to extinguish deficiencies remaining from short sales that occurred before the statute was enacted.

The legislative history also indicates that section 580e was intended to apply to short sales occurring after the statute took effect. Analyzing the July 2011 amendment to section 580e, the Assembly Committee on Judiciary stated:

> SB 458 [codified as amended at Cal. Civ. Proc. Code § 580e] . . . adds additional protections against post-short sale deficiency liability to junior note holders (seconds) when those lenders approve a short sale. It is important to note that the short sale process remains voluntary on every participant's part—only lenders that actually agree to the sale will be affected, and sellers that cannot put together an acceptable sale may still go to foreclosure and even bankruptcy.

Assembly Committee Bill Analysis of SB 458, June 28, 2011, *available at* ftp://www.leginfo.ca.gov/ pub/11-12/bill/sen/sb_0451-0500/sb_458_cfa_20110627_113447_asm_comm.html (last accessed Sept. 30, 2011). As in the statute itself, the Committee's use of forward-looking language—"when those lenders approve a short sale," "only lenders that actually agree to the sale," "sellers that cannot put together an acceptable sale"—suggests the legislature intended section 580e to apply to future short sales, not those that had already occurred.

Section 580e applies only to short sales occurring after the statute was enacted. Here, the parties negotiated the terms of the short sale, and the short sale occurred, before section 580e was enacted. Accordingly section 580e does not apply to this case. Thus, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' second cause of action.

### III. Declaratory Relief Under Common Law Antideficiency Protection

Defendants correctly argue that California's antideficiency protections are creatures of statute, not the common law. *See* Roger Bernhardt, California Mortgages, Deeds of Trust, and Foreclosure Litigation § 5.1 (4th ed. 2009); *see also In re Kearns*, 314 B.R. 819, 822-23 (9th Cir. 2004) (discussing the interplay of the several statutes that comprise "California's complex web of foreclosure and antideficiency laws" (citing *Western Sec. Bank v. Superior Court*, 15 Cal. 4th 232, 237 (1997))). Absent an applicable statutory provision, California law does not provide antideficiency protection. *See Dreyfuss*, 24 Cal. 4th at 412 (declining to expand the scope of antideficiency statutes because the breadth of their protections "is a matter for the Legislature to consider").

Plaintiffs argue that the common law "*Hibernia* Rule," named for *The Hibernia Sav. & Loan Soc'y v. R.S. Thornton*, 109 Cal. 427, 429 (1895), precludes Bank of America from seeking the deficiency in this case. [FAC, ¶ 43, Pls.' Opp'n, at 13-14.] The *Hibernia* Rule is not itself an antideficiency protection, but it does prevent secured lenders from circumventing antideficiency protections for debtors.

Generally, "[i]n California, a creditor secured by a trust deed on real property must rely on the security before enforcing the underlying debt." *Bank of Am. v. Graves*, 51 Cal. App. 4th 607, 611 (1996) (citing Cal. Civ. P. Code §§ 580a, 725a, 726); Cal. Civ. P. Code § 726; *see In re Kearns*, 314 B.R. at 820 (discussing section 726 as "California's so-called 'one-action/security-first' real estate foreclosure statute). "Even if the security is insufficient, the antideficiency statutes (§§ 580a, 580b, 580d) may limit or bar a judgment against the debtor for a deficiency." *Id.* (citing *Roseleaf Corp. v. Chieringino*, 59 Cal. 2d 35, 38-39 (1963)). Where, however, a creditor is secured by a trust deed on real property, and "the value of the security has been lost through no fault of creditor, the creditor may bring a personal action on the debt." *Id.* (citing *Hibernia*, 109 Cal. at 429). The theory underlying this avenue for a secured creditor to bring an action against the debtor is "that if the security is lost or has become valueless at the time the action is commenced, the debt is no longer secured." *Id.* (quoting *Brown v. Jensen*, 41 Cal. 2d 193, 195 (1953)). So, for example, where two creditors hold liens on one parcel of property, and one lienholder forecloses on that parcel, the second lienholder can initiate a

personal action against the debtor because, at the time of that action, the security no longer has value.[3] *See id.*

But under the *Hibernia* Rule, where a secured creditor itself has extinguished the security, the creditor cannot then initiate a personal action against the debtor. *See id.* at 613. In *Hibernia*, for example, the secured creditor failed to file a timely claim with the estate of a deceased debtor, and the superior court assigned the security—a parcel of real property—to the decedent's husband. 109 Cal. at 428. The California Supreme Court held that, by neglecting to file a timely claim, the creditor "deprive[d] himself of the right to foreclose the mortgage," and, therefore, he had also "deprive[d] himself of the right to action upon the note." *Id.* at 429.

Similarly, in *Pacific Valley Bank v. Schwenke*, the secured creditor, without the debtor's consent, released the security through a separate transaction with a third party (the debtor's business partner). *See* 189 Cal. App. 3d 134, 137-38 (1987). The Court of Appeal held that "a creditor is not allowed to circumvent [section 726] by divesting himself of his security without the consent of the debtor." *Id.* (citing *Cooper v. Burch*, 3 Cal. App. 470, 471 (1906)). "If he does so, he has waived his right to proceed on the note." *Id.* at 140.

And in *Simon v. Superior Court*, one bank held two trust deeds on a single parcel of real property. The bank foreclosed on the first trust deed, and then attempted to sue the debtor directly on the second trust deed, arguing that, with regard to that deed, it was a sold-out junior lienholder. 4 Cal. App. 4th 63 (1992). The Court of Appeal held the bank was not a sold-out junior lienholder because, "[a]s the holder of both the first and second liens, Bank was fully able to protect its secured position." *Id.* at 72. By foreclosing on the first deed, the bank itself eliminated the security for the second deed. Thus, the court held that a deficiency action was barred. *Id.*

While Plaintiffs do not expressly state as much, their attempt to apply the *Hibernia* Rule in this case rests on the following premise: by consenting to a short sale, a secured lender causes the security to lose value, and therefore forfeits its rights to collect any deficiency. But Plaintiffs point to no

---

[3] Under such circumstances, the second lienholder is often referenced as a "sold-out junior lienholder." *See Graves*, 51 Cal. App. 4th at 611-12.

authority supporting that premise.  Moreover, *Hibernia*, *Pacific Valley Bank*, and *Simon* make clear that the *Hibernia* Rule prevents secured creditors from acting, without the debtors' knowledge, to extinguish a security in order to circumvent the requirements for secured creditors to "rely on the security before enforcing the underlying debt."  *See Graves*, 51 Cal. App. 4th at 611.  Unlike *Hibernia*, *Pacific Valley Bank*, or *Simon*, Bank of America did not do anything that affected the security without Plaintiffs' knowledge.  Indeed, Plaintiffs themselves sought the short sale, and they actively negotiated with Bank of America to obtain its consent.  Additionally, the deed by which Bank of America reconveyed the property to Plaintiffs so they could execute the short sale expressly states—in bold print—that it did not satisfy Plaintiffs' debt.

The *Hibernia* Rule does not apply to this case.  Plaintiffs have not identified any common law rule that prevents Bank of America from seeking the deficiency in this case.  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' third cause of action.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiffs' claims **WITH PREJUDICE**.  The Clerk shall terminate this case.

**IT IS SO ORDERED.**

DATED:     October 13, 2011

                                      **IRMA E. GONZÁLEZ, Chief Judge**
                                      **United States District Court**